# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3840

_____

| | | |
|---|---|---|
| In re: Farmland Industries, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| _____ | * | |
| | * | |
| GAF Holdings, LLC, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Philip Rinaldi, | * | Appeals from the United States |
| | * | Bankruptcy Appellate Panel for |
| Appellant, | * | the Eighth Circuit. |
| | * | |
| Robert Terry; | * | |
| Pegasus Partners II, L.P.; Pegasus | * | |
| Investors II, L.P.; Pegasus Capital | * | |
| Partners, L.P., | * | |
| | * | |
| Appellants, | * | |
| | * | |
| J.P. Morgan Trust Company, | * | |
| National Association, in its capacity | * | |
| as Trustee of the FI Liquidating Trust; | * | |
| Stanley Riemann. | * | |

_____

No. 07-3932

_____

| | |
|---|---|
| In re: Farmland Industries, Inc., | * |
| | * |
| | * |
| Debtor. | * |
| | * |
| _____ | * |
| | * |
| GAF Holdings, LLC, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Philip Rinaldi; Stanley Riemann, | * |
| Robert Terry, | * |
| | * |
| Appellants. | * |
| | * |
| | * |
| Pegasus Partners II, L.P.; Pegasus | * |
| Investors II, L.P.; Pegasus Capital | * |
| Partners, L.P.; J.P. Morgan Trust | * |
| Company, National Association, | * |
| in its capacity as Trustee of the | * |
| FI Liquidating Trust. | * |

-2-

_____

No. 07-3931

_____

In re: Farmland Industries, Inc.,        *
                                *
           Debtor.               *
                                *
_____        *

GAF Holdings, LLC,          *
                                *
           Appellee,          *
                                *
     v.                        *
                                *
Philip Rinaldi; Stanley Riemann,   *
                                *
           Appellants.       *
                                *

Robert Terry; Pegasus Partners II, L.P.; *
Pegasus Investors II, L.P., Pegasus    *
Capital Partners, L.P.; J.P. Morgan   *
Trust Company, National Association,  *
in its capacity as Trustee of the      *
FI Liquidating Trust.           *

_____

No. 07-3929
_____

| | |
|---|---|
| In re: Farmland Industries, Inc., | * |
| | * |
| Debtor | * |
| | * |
| _____ | * |
| | * |
| GAF Holdings, LLC, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Philip Rinaldi; Stanley Riemann; | * |
| Robert Terry; Pegasus Partners II, | * |
| L.P.; Pegasus Investors II, L.P.; | * |
| Pegasus Capital Partners, L.P., | * |
| J.P. Morgan Trust Company, | * |
| National Association, in its capacity | * |
| as Trustee of the FI Liquidating Trust. | * |
| | * |
| Appellants. | * |

_____

Submitted: September 24, 2008
Filed: June 10, 2009
_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

-4-

In this consolidated appeal, defendants, Pegasus Partners II, L.P., Pegasus Investors II, L.P., Pegasus Capital Partners, L.P. (collectively "Pegasus"), Phillip Rinaldi, Stanley Riemann, Robert Terry (collectively "defendants"), and J.P. Morgan Trust Company, National Association in its capacity as Trustee of the FI Liquidating Trust ("Liquidating Trustee"), appeal the Bankruptcy Appellate Panel's ("BAP") decision finding the bankruptcy court lacked subject matter jurisdiction to rule on the merits of GAF Holdings, LLC's ("GAF's") state law tort claims against the defendants. In response, GAF moves to dismiss the appeal, contending that the BAP's decision is not a final, appealable order such that we lack jurisdiction. We deny GAF's motion to dismiss as the BAP's decision is a final, appealable order. We also reverse the BAP's determination that the bankruptcy court lacked subject matter jurisdiction because GAF's claims are "related to" the bankruptcy of Farmland Industries, Inc. ("Farmland") within the meaning of 28 U.S.C. § 157(c)(1).[1] Finally, we remand to the BAP for a determination as to whether the bankruptcy court properly dismissed GAF's complaint.

I.

In 1999, GAF was incorporated in order to purchase Farmland's refinery and fertilizer plant refinery in Coffeyville, Kansas (the "Coffeyville Assets"). GAF was unable to obtain the necessary financing. Farmland later went into Chapter 11 bankruptcy. The bankruptcy court approved procedures for the sale of the Coffeyville Assets, and GAF made no objection and submitted a bid. Farmland determined GAF was not a qualified bidder for a number of reasons, and GAF did not contest the determination. On November 14, 2003, the bankruptcy court entered an order approving the sale ("Sale Order") to Coffeyville Resources, LLC ("CRLLC"), an entity Pegasus formed for the purpose of purchasing the Coffeyville Assets. In the Sale Order, the bankruptcy court found that GAF's bid was not a qualified bid and that

---

[1] "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).

the sale proceedings were conducted in good faith. GAF did not object to, or appeal, the Sale Order.

On February 2, 2004, GAF filed a Federal Rule of Civil Procedure 60(b) motion for relief from the Sale Order, asserting that: (1) Riemann, a former Farmland executive, had a conflict of interest at the time of the sale of the Coffeyville Assets to CRLLC because, at the time, Riemann was in discussion with CRLLC about possible employment and, after the sale was closed, Riemann was employed by CRLLC and (2) GAF did not have the opportunity to conduct adequate due diligence prior to making its bid. The bankruptcy court held a hearing on the motion. The court denied the motion, concluding that (1) the sale was conducted at arm's length with good faith negotiations and (2) there was insufficient evidence to support either of GAF's claims. GAF did not appeal the decision. On February 20, 2004, the bankruptcy court entered an order authorizing an amendment to the sale agreement. The order reaffirmed and incorporated the terms of the Sale Order unaffected by the amendment, including the determination that the sale of the Coffeyville Assets had been conducted in good faith. GAF did not challenge the order. The sale of the Coffeyville Assets closed on March 3, 2004.

Almost three years later, on February 27, 2007, GAF filed the complaint that is the subject of this appeal in the bankruptcy court. GAF's complaint alleges that the defendants (1) intentionally interfered with GAF's business expectancy in purchasing the Coffeyville Assets and (2) participated in a civil conspiracy to conceal the real value of the Coffeyville Assets, depriving the bankruptcy estate of over $1 billion. GAF relies on "new" evidence of the defendants' misconduct in connection with the sale of the Coffeyville Assets. GAF named the Liquidating Trustee in the Complaint but seeks no damages against it. Instead, GAF asks the bankruptcy court to order the Liquidating Trustee to set forth any interest it might have in any award of damages that GAF receives pursuant to its complaint. All of the defendants, for various reasons, moved the bankruptcy court to dismiss GAF's complaint.

On July 17, 2007, the bankruptcy court dismissed GAF's complaint, providing multiple, independent bases for its ruling. First, the bankruptcy court concluded that the complaint was barred by collateral estoppel as an impermissible collateral attack on the court's prior orders in which the court determined that the sale was conducted in good faith, the *in rem* protections afforded purchasers of bankruptcy assets,[2] and the limitations period set forth in Federal Rule of Civil Procedure 60(b).[3] Second, the court determined that the complaint failed to state a claim under Missouri law: (1) with respect to tortious interference, the court concluded that GAF cannot establish the requisite reasonable business expectancy because it submitted only an unqualified bid such that it would not have been entitled to participate in an auction for the Coffeyville Assets, and (2) civil conspiracy requires the commission of an unlawful act and the only one GAF alleges is tortious interference which fails as a matter of law. Third, the court resolved that GAF lacked standing to challenge the sale of the Coffeyville Assets. The court reasoned that GAF was not aggrieved by the defendants' allegedly tortious conduct because GAF had failed to establish that it had a reasonable expectation of being the winning bidder for the Coffeyville Assets absent the defendants' alleged misconduct.

GAF appealed to the BAP. On December 5, 2007, the BAP held *sua sponte* that the bankruptcy court lacked subject matter jurisdiction over GAF's complaint and remanded the matter to the bankruptcy court with instructions to dismiss. The defendants filed this appeal soon thereafter, challenging the BAP's determination that the bankruptcy court lacked jurisdiction over GAF's complaint. GAF moved to

---

[2]"A bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against [the] parties to the proceedings." Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 732 (8th Cir. 2004).

[3]"***Timing***. A motion under Rule 60(b) must be made within a reasonable time– and for reasons [including newly discovered evidence and fraud] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

dismiss the appeal, asserting that this court lacks jurisdiction. Then, on May 7, 2008, GAF filed suit against all of the defendants named in this case, except the Liquidating Trustee, in the United States District Court for the District of Missouri, asserting the same allegations and claims as here. See GAF Holdings, LLC v. Rinaldi, No. 4:08-cv-00335 (W. D. Mo. May 7, 2008). On October 15, 2008, the district court granted the parties' "joint motion to stay all proceedings in this case until 45 days after the Eighth Circuit issues its decision in [this appeal]." See GAF Holdings, LLC v. Rinaldi, No. 4:08-cv-00335, slip op. at 1 (W. D. Mo. Oct. 15, 2008) (unpublished).

II.

A.

We first address GAF's motion to dismiss this appeal. GAF asserts that we lack jurisdiction because the BAP's decision does not constitute a final, appealable order. "In bankruptcy cases, this court can hear appeals only from final decisions, judgments, orders, and decrees entered by district courts or bankruptcy appellate panels." In re Popkin & Stern, 289 F.3d 554, 556 (8th Cir. 2002) (quotation omitted); see 28 U.S.C. § 158(d). While an order remanding a case to a bankruptcy court for further proceedings is ordinarily not final, a remand order that leaves only ministerial duties for the bankruptcy court is final. Id.; see In re Dorholt, Inc., 224 F.3d 871, 874 n.1 (8th Cir. 2000) (observing that this court possessed jurisdiction, even though the BAP's remand order reversed the bankruptcy court because the BAP "did not remand for further fact-based inquiry").

Here, the BAP remanded to the bankruptcy court with instructions to dismiss, a purely mechanical or ministerial task. See In re Popkin & Stern, 289 F.3d at 556. Compare In re Ryan, 276 F. App'x 963, 965 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("Here, the district court's order left nothing for the bankruptcy court to do but dismiss the adversary proceeding initiated by Entrust for lack of subject

-8-

matter jurisdiction. The district court's order was thus final and immediately appealable, giving us jurisdiction over this case."), with In re Vekco, Inc., 792 F.2d 744, 745 (8th Cir. 1986) ("Here, we have little trouble concluding the district court decision does not constitute a final decision for purposes of appeal. In remanding, the district court did not resolve the merits of the controversy, leaving only ministerial tasks to be performed by the bankruptcy court. Rather, the district court specifically anticipated that the bankruptcy court would further develop the record and would exercise considerable discretion in resolving the issue remanded to it. Then, following remand, the district court would be in a position to resolve finally and fully all issues raised by the Federal Land Bank in its appeal."). Thus, the BAP's order is final and appealable. Accordingly, we possess jurisdiction over this appeal; GAF's motion to dismiss this appeal is denied.

### B.

Next, we address whether the BAP correctly concluded that the bankruptcy court lacked subject matter jurisdiction over GAF's complaint. We review this determination de novo. U.S. Commodity Futures Trading Comm'n. v. NRG Energy, Inc., 457 F.3d 776, 779 (8th Cir. 2006).

As a threshold matter, we note that GAF, which initially sought to invoke the bankruptcy court's jurisdiction, now argues that the bankruptcy court lacked jurisdiction. This reversal follows the bankruptcy court's dismissal, with prejudice, of GAF's complaint.

According to GAF's complaint:

> The sale to CRLLC was not the convergence of a random set of facts but a sophisticated plan based upon concealment and material misrepresentation perpetrated by the Acting Defendants, with the assistance of their respective counsel, in violation of known duties

arising under applicable Bankruptcy Statutes and Bankruptcy Court rules. The Acting Defendants thereby absconded with the economic benefit of the Coffeyville Assets and deprived the Estate of in excess of $1 billion.

(Compl. ¶ 18 (footnoted omitted).)

Plaintiff's Complaint, under Missouri law, is based upon the Acting Defendants interfering with and causing [GAF] to lose its business opportunity to purchase the Coffeyville Assets. The Acting Defendants accomplished this through illegal misrepresentation, and concealment of material facts to the Bankruptcy Court, abuse and illegal manipulation of the judicial process.

(Id. ¶ 21.)

As a consequence of the foregoing acts of the Acting Defendants, the Liquidating Trustee may have or claim to have an interest in the proceeds of this litigation.

(Id. ¶ 87.)

[GAF seeks an order] [r]equiring the Liquidating Trustee . . . to set forth its interest in the proceeds of this litigation or be forever barred from asserting the same against [GAF] or as a charge against any award entered by this Court in favor of [GAF] arising from these proceedings.

(Id. at 43-44.)

GAF's brief to the bankruptcy court in opposition to the motion to dismiss stated:

Since [GAF] had committed to pay considerably greater monies for the Coffeyville Assets than was actually paid by [CRLLC], significant

monies ought, of right, to be paid to the farmer/member owners of Farmland. . . . The Liquidating Trustee is entitled to pursue, control, and distribute to the farmer member owner[s] those monies recovered from the Acting Defendants for the wrongs committed. It is that portion of Plaintiff's Complaint (so denigrated by the Liquidated Trustee) in which Plaintiff invites the Liquidating Trustee's participation.

The entitlement of Farmland's farmer/member owners' entitlement to the funds recovered in recompense for the wrongs committed by the Acting Defendants would, however, be capped at the amount Plaintiff had committed to pay for the Coffeyville Assets. . . . By no performance of logical gymnastics can [GAF's] claims for tortious interference with its business expectancy be transformed into the property of the Liquidating Trustee. The Liquidating Trustee is entitled to the difference between [GAF's] offer and [CRLLC's] actual purchase price, but no more.

(J.A. 274-75.)

GAF's attorney represented to the bankruptcy court,

The trustee, Your Honor, has we believe, its own cause of action against Coffeyville Resources, LLC. What we've said to the trustee in our complaint, Your Honor, is simply, look, we believe we have newly discovered evidence. We have our own tortious cause of action. And when we prevail, we believe that the proper calculation of damages would be to offset the amount of our bid as submitted to this Court. In our opinion, the Court is free to differ, the trustee is free to differ, but in our opinion, that increased prices that we bid should have gone to the estate. We're simply saying that as part of our claim, as part of our damages, you might want that. If you do, step forward and ask for it. If you want to bring your own cause of action, that's not part of our case. But if you want to file a cross-claim, you can do that. If you want to bring an independent cause of action, you can do that. But this is not an attempt to take any property that otherwise belongs to the estate.

(Bankr. Ct. Hr'g Tr. 37-38.)

Before the BAP, GAF's counsel stated,

> In determin[ing] lost profits, we believe that the Court would be proper in calculating that amount that we're entitled to by deducting the amount that we bid, and that money, that portion of those damages proceeds should go to the estate. We have said that. We have invited the bankruptcy trustee to assert its claim for at least that amount.

(BAP Tr. 8.)

Finally, GAF's Brief to this court states: "Appellant, The Liquidating Trustee was a named Defendant, not based on any claimed malfeasance, but on the theory that GAF's claims *might have an effect on the Farmland Bankruptcy Estate*." (Appellee's Br. i (emphasis added).)

Bankruptcy courts have jurisdiction over civil proceedings "arising under," "arising in," or "related to" title 11. 28 U.S.C. § 157(b)(1), (c)(1). "Civil proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings." Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773 (8th Cir. 1995). Core proceedings are those cases "arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(1). Non-core "related to" proceedings "could conceivably have an[] effect on the estate being administered in bankruptcy. . . ." Specialty Mills, 51 F.3d at 774 (quotation omitted). The appellants argue multiple bases for the bankruptcy court's jurisdiction over GAF's claims. We address each in turn.

First, appellants assert that the bankruptcy court has "arising under" jurisdiction because GAF's state law tort claims are premised, in part, on the defendants alleged violations of duties imposed by federal bankruptcy law. Claims "arising under" Title 11 are "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." In re Wood, 825 F.2d 90, 96 (5th Cir. 1987); see also

-12-

Browning v. Levy, 283 F.3d 761, 773 (6th Cir. 2002) (providing that "arising under" jurisdiction exists where one "invoke[s] a substantive right created by federal bankruptcy law" (quotation omitted)). Both of GAF's causes of action, intentional interference with a business expectancy and civil conspiracy, are premised upon Missouri common law. See Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008) (listing elements for civil conspiracy claim); Hertz Corp. v. Raks Hospitality, Inc., 196 S.W.3d 536, 549 (Mo. Ct. App. 2006) (providing elements for intentional inference with a business expectancy). Because GAF's claims do not invoke a substantive right provided by the Bankruptcy Code, the bankruptcy court did not possess "arising under" jurisdiction over GAF's complaint.

Second, appellants contend that the bankruptcy court had "arising in" jurisdiction because: (1) GAF's claims could not exist absent Farmland's bankruptcy case; (2) the statutory duties GAF alleges appellants violated only exist in bankruptcy; (3) GAF's claims required the bankruptcy court to implement, interpret, and enforce its orders; (4) GAF sued the Liquidating Trustee and former officers of Farmland; (5) GAF attacked the bankruptcy court's prior "good faith" findings in orders concerning the sale of bankruptcy estate assets; (6) GAF alleges that Farmland's bankruptcy estate is entitled to damages as a result of the appellants' allegedly improper actions in the sale of the Coffeyville Assets; (7) GAF's complaint is a collateral attack on the Sale Order; (8) GAF alleges that collusion was perpetrated in the bankruptcy court's own proceedings; and (9) at present, the estate is paying for Riemann's legal expenses in defending against GAF's claims.

"'[A]rising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." In re Wood, 825 F.2d at 97. As the Third Circuit further explained, "claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." Stoe v. Flaherty, 436 F.3d 209, 218 (3d Cir. 2006). Accordingly, "administrative

matters" such as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, are the principal constituents of "arising in" jurisdiction. 1 Collier on Bankruptcy § 3.01[4][c][iv] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009). GAF's tort claims do not fit into the narrow category of administrative matters which "have no existence outside of the bankruptcy," In re Wood, 825 F.2d at 97, or "could only arise in the context of a bankruptcy," Stoe, 436 F.3d at 218. Thus, the bankruptcy court did not possess "arising in" jurisdiction over GAF's claims.

Third, the appellants contend that the bankruptcy court had "related to" jurisdiction because it was conceivable when the lawsuit was filed that: (1) GAF would prevail on its claims such that there would be a significant impact on the administration of the estate and the ultimate distributions to creditors, as GAF concedes that "as a consequence of the . . . acts of the . . . defendants, the Liquidating Trustee may have or claim to have an interest in the proceedings of this litigation" (Compl. 43-44); (2) the recoveries sought by GAF belong to the Farmland bankruptcy estate; (3) GAF's claims implicate the Liquidating Trustee's exclusive authority to challenge fraud in a bankruptcy sale pursuant to 11 U.S.C. § 363(n)[4]; and (4) the Farmland bankruptcy estate would have to indemnify Riemann and Terry if GAF prevails on its claim because the bankruptcy court has already determined that the Liquidating Trustee has an obligation to indemnify Riemann and Terry for claims concerning the performance of their duties to the estate. Further, with regard to the

---

[4]11 U.S.C. § 363(n) provides, in part:

The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.

indemnifications, appellants assert that the effect of GAF's claims is more than conceivable as the estate is currently advancing fees to Riemann and Terry.

This court has adopted the "conceivable effect" test for "related to" jurisdiction providing that:

> [A] civil proceeding is related to bankruptcy . . . [where] the outcome of that proceeding could *conceivably have any effect on the estate* being administered in the bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate.

Specialty Mills, 51 F.3d at 774 (emphasis added) (quotation omitted). "Proceedings 'related to' the bankruptcy include . . . suits between third parties which have an effect on the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 307 n.5 (1995); see also In re Lemco Gypsum, Inc., 910 F.2d 784, 788 (11th Cir. 1990) (stating that the "proceeding need not necessarily be against the debtor or against the debtor's property").

Under the "conceivable effect" test, "the jurisdictional grant is extremely broad." In re Toledo, 170 F.3d 1340, 1345 (11th Cir. 1999). As the Supreme Court has recognized, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 129 (1995)). However, the Court has also explained that "related to" jurisdiction is not limitless as "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." Celotex, 514 U.S. at 308 n.6; see also Specialty Mills, 51 F.3d at 774 ("For subject matter jurisdiction to exist in a 'related to' action, there must be some nexus

between the civil proceeding and the Title 11 case.").  Thus, we must determine whether GAF's tort claims against the appellants could conceivably have an effect on the Farmland bankruptcy estate.

We note that, despite its arguments against "related-to" jurisdiction, GAF has "conceded" that such jurisdiction exists in its brief to this court, stating that "GAF's claims *might have an effect on the Farmland Bankruptcy Estate*."  (Appellee's Br. i (emphasis added).)  However, a party cannot concede "related-to" jurisdiction by agreeing that the "conceivable effect" test has been met.  See Dieser v. Cont'l Cas. Co., 440 F.3d 920, 923 (8th Cir. 2006) ("[J]urisdiction issues will be raised sua sponte by a federal court when there is an indication that jurisdiction is lacking, even if the parties concede the issue.") (quotation omitted).  This court's obligation to determine whether a claim gives rise to a "conceivable effect" on a bankruptcy estate is independent of a party's stipulation.  See id.

In this case, "related-to jurisdiction" exists because the Liquidating Trustee is currently advancing money out of the bankruptcy estate to Riemann and Terry as they incur legal fees in defending against GAF's claims.[5]  In re Dow Corning Corp., 86 F.3d 482 (6th Cir. 1996), involved personal injury claims against Dow Corning, a debtor in Chapter 11 bankruptcy, and other defendants.  Id. at 485.  The Sixth Circuit

---

[5]In a prior proceeding in the Farmland bankruptcy, the bankruptcy court determined that, under Farmland's bylaws and Kansas law, former officers and directors of Farmland were entitled to advancement of legal fees throughout the litigation with the qualification that, ultimately, they must not be found to have acted in bad faith.  See J.P. Morgan Trust Co., N.A., Liquidating Trustee v. Cleberg, Adversary Proceeding No. 05-4099, slip op. at 6-10, 12 (Bankr. W.D. Mo. Oct. 11, 2005) (unpublished) (citing Farmland's Articles & Bylaws, Article VII, § 9 *Indemnification of Directors, Officers, and Employees.* (providing that officers "shall be indemnified by [Farmland] as of right to the fully extent permitted or authorized by the law of the State of Kansas . . . against any liability, judgment, fine, amount paid in settlement, costs and expense (including attorney's fees), asserted or threatened . . . arising out of his status" as an officer)).  This decision is not at issue in this appeal.

-16-

held that the claims against the nondebtor defendants were "related to" Dow Corning's bankruptcy, in part, because of the nondebtor defendants' potential indemnification claims against Dow Corning. See id. at 488, 490-94; see also In re Brooks Mays Music Co., 363 B.R. 801, 813 (Bankr. N.D. Tex. 2007) (concluding that "related to" jurisdiction existed because, even though the claims were mostly or entirely state law claims asserted by one third-party against another, if the plaintiff prevailed it would "most likely have claims back against the estate by virtue of their indemnification agreements with the Debtor").

This court addressed In re Dow Corning Corp. in Kocher v. Dow Chem. Co., 132 F.3d 1225 (8th Cir. 1997). Although, due to the nature of the appellant's argument,[6] the Kocher Court only had to determine whether an "arguable basis" for "related to" jurisdiction existed, the court stated:

> Kocher's claims against Dow Chemical and DuPont bear precisely the same relation to Dow Corning's bankruptcy as did the plaintiffs' claims against the nondebtor defendants in In re Dow Corning Corp. Following the rationale of that decision, it is at least arguable that Kocher's claims against Dow Chemical and DuPont conceivably could affect Dow Corning's bankruptcy estate and thus are "related to" the bankruptcy case. Thus, for this reason also, we hold that the District Court did have an arguable basis for jurisdiction over Kocher's claims against Dow Chemical and DuPont, although we express no opinion as to whether the District Court was in fact correct to exercise jurisdiction over these claims.

---

[6]In Kocher, the appellant asserted "that the [District Court's] judgments were void for lack of subject matter jurisdiction . . . ." 132 F.3d at 1229. The Kocher Court observed that "a judgment is not void for lack of subject matter jurisdiction unless 'no arguable basis' for jurisdiction existed." Id. at 1230 (quoting Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986)). Therefore, this court considered "whether an arguable basis for jurisdiction over Kocher's claims existed." Id.

Id. at 1231. However, even if the possibility of indemnification is insufficient to invoke "related to" jurisdiction, see Transamerica Fin. Life Ins. Co. v. Merrill Lynch & Co., Inc., 302 B.R. 620, 626 (N.D. Iowa 2003) (determining that the fact that indemnification and contribution claims against a debtor arising out of an action between non-debtor third parties "are conceivable in the future, . . . have not yet accrued[,] and would require another lawsuit before they could have an impact on [the debtor's] bankruptcy proceeding" do not establish "related to" jurisdiction), the indemnification claims in this case are not merely speculative in light of the payment of Riemann's and Terry's legal fees out of the Farmland bankruptcy estate. Thus, the indemnifications not only "*could* conceivably have an[] effect on the [Farmland] estate," see Specialty Mills, 51 F.3d at 774 (emphasis added) (quotation omitted), at present, they *are* having an effect. Having found "related to" jurisdiction exists for this reason, we need not address the defendants' remaining arguments for "related-to" jurisdiction. Similarly, we do not consider the defendants' contentions asserting additional jurisdictional bases.

## III.

We reverse the BAP's determination that the bankruptcy court lacked jurisdiction over this case and remand to the BAP for consideration of whether the bankruptcy court properly dismissed GAF's complaint.

_____